# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (this "Agreement") is hereby entered into this 15th day of May 2016 ("Effective Date") by and between the City of Jackson ("the City"), and Legacy Five, LLC ("Legacy Five"), a limited liability company, both of which are collectively referred to herein as the "Parties," or individually as a "Party."

## RECITALS

WHEREAS, on or about February 21, 2012, the City adopted Ordinance No. 2012-03, which implemented the City's Non-Owner Occupied Residential Property Registry program through which owners of non-owner occupied residential property in the City are required, inter alia, to register such property with the City, subject such property to inspection by the City, and pay property registration and code enforcement inspection fees to the City, respectively, on a biennial basis (hereinafter referred to as "NOORPR");

WHEREAS, on or about September 12, 2013, Legacy Five filed a lawsuit against the City in the Michigan Court of Appeals (Case No. 318137) challenging the assessment of the City's code enforcement inspection fee as unconstitutional under Article IX, Sections 31 and 32 of the Headlee Amendment of the Michigan Constitution ("the Lawsuit");

WHEREAS, on or about August 12, 2014, as directed by the Michigan Court of Appeals, the Honorable Thomas D. Wilson of the Jackson County Circuit Court appointed the Honorable Richard N. LaFlamme of the Jackson County Circuit Court (Case No. 14-2367-CZ) as a Special Master in the Lawsuit in order to make all determinations necessary to facilitate the Court of Appeals' resolution of factual and legal matters raised by the parties;

WHEREAS, on or about December 4, 2014, plaintiff Robert Tulloch, on behalf of himself and others similarly situated, filed under MCR 3.501 a class action lawsuit in Jackson County Circuit Court (Case No. 14-3295-CZ) also challenging the assessment of the City's code enforcement inspection fee as unconstitutional under Article IX, Sections 31 and 32 of the Headlee Amendment of the Michigan Constitution ("the Class Action");

WHEREAS, on or about June 3, 2015, the Jackson County Circuit Court stayed the Class Action pending resolution of the Lawsuit;

WHEREAS, the City desires to litigate and adjudicate the Class Action before the Lawsuit;

WHEREAS, Legacy Five is unwilling to delay further litigation of the Lawsuit unless the Lawsuit is resolved through the execution of this Agreement under the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the mutual promises contained herein, and other good and valuable consideration as hereinafter recited, the receipt and adequacy of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

## AGREEMENT

1. **Recitals and Effective Time.** The Recitals set forth above are hereby incorporated into the body of this Agreement by reference as if fully set forth herein verbatim. Upon its full and mutual execution by the Parties, this Agreement shall be deemed effective as of the Effective Date first written above.

2. **Settlement.** The Parties agree to the following:

   a. The City's assessment of a code enforcement inspection and/or registration fee on a per-unit basis is regulatory, proportional and voluntary under the principles of *Bolt v City of Lansing* 459 Mich 152, 587 NW2d 264 (1998) and is not an illegal tax or fee;

   b. In exchange for the consideration and actions set forth in this Agreement, Legacy Five shall dismiss the Lawsuit and the claims brought therein with prejudice to allow the City to proceed with the litigation and adjudication of the Class Action;

   c. Within 30 days of receipt of a fully executed Agreement, the City shall pay Legacy Five Seventeen Thousand Five Hundred USD ($17,500);

   d. Except as provided in subparagraphs 2(e)-2(j), Legacy Five is and shall be subject to the registration and inspection requirements and obligations provided for in any and all City ordinances and/or resolutions relating to NOORPR, including but not limited to, the requirement to pay the biennial registration fees and inspection fees adopted by the City through ordinance and/or resolution;

   e. Inspections of any non-owner occupied property currently owned by Legacy Five as of the Effective Date of this Agreement shall occur on a biennial basis, with the next inspection and any related re-inspections scheduled to occur in FY 2017-2018 ("2017 Inspection");

   f. For the 2017 Inspection, the City shall charge Legacy Five at a rate of $192/hour;

   g. The parties agree that the $192/hour rate set forth in subparagraph 2(f) reflects a $16.88 decrease in the $208.88 rate that would be applicable to Legacy Five's 2017 Inspection if the City were to calculate the rate relying on the methodology set forth in subparagraph 2(h);

   h. For any and all future inspections or re-inspections of non-owner occupied property currently owned by Legacy Five as of the Effective Date of this Agreement that occur after the 2017 Inspection, the City shall charge Legacy Five at a rate/hour to be calculated in accordance with the following methodology: "Total Estimated Housing Code Enforcement Fund Inspection-Related

2

Expenditures for a 2-Year Cycle" divided by "Total Estimated Number of Housing Code Enforcement Billable Inspection Hours for a 2-Year Cycle"[1];

i. The City will calculate the rate/hour to be used for Legacy Five's future inspections and re-inspections using the "Total Estimated Housing Code Enforcement Fund Inspection-Related Expenditures for a 2-Year Cycle" and the "Total Estimated Number of Housing Code Enforcement Billable Inspection Hours for a 2-Year Cycle" applicable for the two-year cycle in which Legacy Five's inspection occurs, and in response to a request from Legacy Five properly grounded under Michigan's Freedom of Information Act ("FOIA"), will provide Legacy Five with support for the City's calculations in accordance with the terms of FOIA.

j. Legacy Five agrees that it will not challenge the rates or methodologies set forth in subparagraphs 2(f)-2(i) in the future, and that these rates and methodologies, and any increases to the rate resulting from the application of these methodologies, are and shall be lawful under the laws of the State of Michigan, including but not limited to, the Housing Law of Michigan, MCL 125.401 et seq. and Article IX, Section 31 of the Headlee Amendment of the Michigan Constitution; provided, however, that if in the future the City revises the methodology for calculating its code enforcement inspection fee on a City-wide basis such that Legacy Five's inspections fees for the non-owner occupied property that it currently owns as of the Effective Date of this Agreement would decrease under the revised methodology, the City shall charge Legacy Five in accordance with the revised methodology being applied City-wide.

3. **Dismissal of Lawsuit**. The Parties agree to execute and file in the Jackson County Circuit Court and/or the Michigan Court of Appeals any documents necessary to effectuate the dismissal of the Lawsuit with prejudice and to satisfy the requirements of Paragraph 9.

4. **Confidentiality**. The Parties agree that the terms of this Agreement are confidential and shall not be disclosed to any third party except in compliance with a court order. Nothing in this Paragraph shall limit a Party's ability to disclose the terms of this Agreement to those attorneys, accountants, and professional advisors that either Party deems necessary to effectuate the terms of this Agreement.

5. **Release**. Upon the compliance of the Parties with the terms of the Agreement and in consideration for the actions set forth in the Agreement, each Party does, for itself, its

---

[1] By way of example, to calculate the $208.88 rate applicable for the 2017 Inspection (before the City's application of its $16.88 reduction), the City used a combination of actual and estimated direct and indirect Housing Code Enforcement Fund inspection-related expenditures for FY 2015-2016 (i.e., $754,326, which reflects actual Fund expenditures through January 31, 2016 and estimated Fund expenditures through June 31, 2016) to derive the "Total Estimated Housing Code Enforcement Fund Inspection-Related Expenditures for a 2-Year Cycle" (i.e., $1,508,652) and divided this number by the "Total Estimated Number of Housing Code Enforcement Billable Inspection Hours for a 2-Year Cycle" (i.e., 7,223), which is based on the total estimated number of inspectors (i.e., 4.5 for FY 2015-2016), the number of estimated hours worked per day per inspector, and the number of work days per two-year cycle.

predecessors, successors, assigns, parents, subsidiaries, affiliates, related entities, agents, directors, officers, employees, shareholders, representatives, sureties and attorneys, hereby remise, release, and forever discharge the other Party and each of its past, present or future affiliates, partners, agents, representatives, directors, officers, employees, and attorneys (whether elected, appointed, employed or retained) of and from any and all claims, actions, causes of action, suits, accounts, covenants, contracts, controversies, damages, judgments, and demands of whatever kind or nature that has been brought or could have been brought, or now has or had at any time in the past, relating to or arising out of the Lawsuit and the claims filed therein, the Class Action, the City's NOORPR, any NOORPR-related ordinances and/or resolutions, and/or the registration and code enforcement inspection fees charged by the City, including but not limited to the methodology used by the City to calculate, along with the calculation of, the rate/hour to be charged to Legacy Five for the 2017 Inspection and any future inspections. To the extent that the purported class in the Class Action is certified, Legacy Five shall opt out of any claims pursued by the class in the Class Action and shall not receive any relief that may be awarded in the Class Action. Nothing in this Paragraph shall limit the City's right to undertake any action to enforce Legacy Five's compliance with the State of Michigan's housing laws and the City's housing codes for any alleged violations of the same arising after the Effective Date, and/or to collect from Legacy Five any registration and inspection fees arising and payable after the Effective Date.

6. **Production of Discovery Materials**. Legacy Five shall not produce to any third-party the discovery materials produced by the City in the Lawsuit unless in response to a lawfully valid subpoena and not until it has verified that the City has no objection to the production of materials in response to the subpoena. In the event Legacy Five receives such a subpoena, it will notify the City within 72 hours of its receipt of the subpoena so that the City may exercise its right to object to the subpoena and/or seek a protective order.

7. **Denial of Liability**. The Parties hereto further agree that nothing contained in this Agreement is to be an admission of fault or liability, such fault or liability being expressly denied.

8. **Non-Reliance; Entire Agreement**. It is understood and agreed that neither of the Parties nor any other person has made any promise, representation or warranty whatsoever, be it express, implied or statutory, not contained herein to induce the signing of this Agreement and the Parties further acknowledge that none of them has signed this Agreement in reliance upon any promise, representation or warranty not contained in this Agreement. This Agreement contains the entire agreement among the Parties with respect to the subject matter of this Agreement and supersedes and replaces all prior negotiations, understandings and agreements, written and oral, with respect to the subject matter hereof, which have not been incorporated by reference herein.

9. **Continuing Jurisdiction**. The Parties agree that the Honorable Richard N. LaFlamme of the Jackson County Circuit Court will have the authority and jurisdiction to oversee and enforce the terms of this Agreement as necessary.

10. **Non-Waiver**. This Agreement may not be modified, and no right hereunder shall be deemed waived, except by an instrument in writing signed by the Authorized Member of

Legacy Five, and the City's Mayor and City Manager. Any waiver of any provision of this Agreement or of any right hereunder shall not be deemed a continuing waiver and shall not prevent or estop such party from thereafter enforcing such provision or right. The failure of a Party to insist in any one or more instances upon the strict performance by the other Party of any of the terms or provisions in this Agreement shall not be construed as a waiver or relinquishment for the future of any such terms or provisions, but the same shall continue in full force and effect. Nor shall either Party's failure to exercise any right or option arising out of a breach of this Agreement be deemed a waiver of any right or option with respect to any subsequent or different breach or the continuance of any existing breach.

11. **Enforceability.** In the event that any portion of this Agreement is deemed unenforceable as against public policy or otherwise as provided by law, then the remainder of this Agreement shall be enforced as though such portions had not been included, unless to do so would cause this Agreement to fail of its essential purpose.

12. **Governing Law.** This Agreement and the rights and obligations hereunder shall be governed by, and construed in accordance with, the laws of the State of Michigan regardless of any principles of conflicts of laws or choice of laws of any jurisdiction.

13. **Waiver of Jury Trial.** In the event of a dispute arising out of this Agreement, the Parties each waive their respective rights to a trial by jury in any action, suit, proceeding, or counterclaim filed in connection with the enforcement of this Agreement.

14. **Counterparts.** This Agreement may be executed in counterparts, each of which will be deemed an original, but both of which together will constitute one and the same instrument. A facsimile, PDF or email copy of the signature of any signatory on this Agreement shall be deemed the equivalent of an original thereof.

15. **Capacity and Authority.** The Parties expressly represent and warrant that the persons signing this Agreement are authorized to execute this Agreement on their behalf and to bind each Party to the terms of this Agreement. No other person or entity has or had any interest in the claims, demands, obligations, or causes of action referred to in this Agreement.

16. **Voluntary Agreement.** In entering into this Agreement, the Parties represent that they have relied upon the legal advice of personally-selected counsel who has reviewed and negotiated the terms of this Agreement and that the terms of the Agreement have been completely read and explained, and that those terms are fully understood and voluntarily agreed to by the Parties. Neither Party shall be considered to have drafted this Agreement in any subsequent related dispute.

17. **Further Assurances.** The Parties agree to execute and deliver any and all instruments and documents and take all such appropriate actions reasonably necessary or required from time to time to effectuate the terms and intent of this Agreement.

18. **Notices.** For purposes of any written notice required to be sent by the Parties under this Agreement, said written notice should be directed to the following:

<u>Written Notice to Legacy Five</u>:

Paul Eyde
6350 W. Michigan Ave., Ste. 100
Lansing, MI 48917

<u>With a copy to</u>:

Bradley S. Defoe, Esq.
Varnum LLP
39500 High Pointe Blvd., Ste. 350
Novi, Michigan 48375

<u>Written Notice to the City should be sent to</u>:

Patrick H. Burtch (or Jackson City Manager)
Jackson City Hall
161 W. Michigan Ave.
Jackson, Michigan 49201

<u>With a copy to</u>:

Bethany M. Smith, Esq. (or The City Attorney)
Office of the City Attorney
Jackson City Hall
161 W. Michigan Ave.
Jackson, Michigan 49201

**THE REMAINDER OF THIS PAGE LEFT INTENTIONALLY BLANK**

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Effective Date first above written.

**LEGACY FIVE, LLC**

By: _____
Paul Eyde, Authorized Member

**THE CITY OF JACKSON**

By: _____
William C. Jors, Mayor

By: _____
Patrick H. Burtch, City Manager

7

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Effective Date first above written.

**LEGACY FIVE, LLC**

By:_____
Paul Eyde, Authorized Member

**THE CITY OF JACKSON**

By:_____
William C. Jors, Mayor

By:_____
Patrick H. Burtch, City Manager

7